IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Lea S.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Case No. 3:22-cv-01539-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits under the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On May 22, 2019, Plaintiff filed an application for benefits, alleging disability beginning January 3, 2010. Tr. 203–10.[2] After a hearing, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled under the Social Security Act. Tr. 13–57. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

I.      STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

II.     DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant at steps one through four. If the claimant satisfies their burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. § 404.1520; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is capable of performing work in the national economy, the claimant is not disabled. § 404.1520(a)(5); *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

Plaintiff claims that she was unable to work because she suffers from carpel tunnel syndrome, a tear of a ligament in her right hand, shoulder injuries, reflex sympathetic dystrophy of her right upper extremity, degenerative disc disease, obesity, hypertension, and migraine headaches. Tr. 16; 37–38. Plaintiff testified that these symptoms affected her dexterity and balance to such a degree that she could not grasp a cup of coffee and would fall over. Tr. 45. Plaintiff also testified that hypersensitivity and pain in her right hand and arm was so severe that "even my cat whiskers tracing across my hand felt like razor blades." Tr. 44. Plaintiff further stated that the resulting pain frequently triggers migraine headaches which, together with her other symptoms, make it difficult to function and accomplish simple tasks like brushing her teeth. Tr. 44–45; *see also*, tr. 528 ("I can't lift with right arm/hand, grasp/grip is gone, hard to get dressed, can't lift hand/arm (right) to do my hair, brush teeth (can't grasp toothbrush) [or] button/zip clothes - hard to put on socks, can't sleep on my right side.").

After a hearing, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014. Tr. 15. At step two of the sequential evaluation process, the ALJ determined Plaintiff had the following severe impairments: right carpal tunnel syndrome; right wrist disorder; reflex sympathetic dystrophy of the right upper extremity; spine disorder; and obesity. Tr. 16. The ALJ also determined that Plaintiff's had the following non-severe impairments: headaches and hypertension. *Id.* Based on the medical and non-medical evidence of record, the ALJ concluded that:

> claimant had the residual functional capacity to perform less than the full range of light work. . . . She can occasionally life/carry 20 pounds, and frequently lift/carry

3 – OPINION AND ORDER

> 10 pounds. She can push/pull three pounds with the right upper extremity and she is right hand dominant. She can stand/walk six hours combined total, and sit six hours in an 8-hour workday. She can occasionally climb ladders, ropes, [and] scaffolds. She can frequently reach overhead with the right upper extremity. She can occasionally handle with the right hand, and occasionally finger and feel with the right hand. She can have occasional exposure to extremely cold, and heat. She can have no exposure to vibration, or hazards such as unprotected heights or moving mechanical parts.

*Id.*

Relying on the testimony of a vocational expert, at step four the ALJ found that Plaintiff could perform her past relevant work as a case aid. Tr. 22. At step five, the ALJ made alternative findings that Plaintiff was capable of employment in the national economy as a cashier, host/greeter, or school bus monitor. Tr. 23. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. *Id.* The Appeals Council declined to grant review of the ALJ's decision and Plaintiff timely appealed. Tr. 1–3; Pl.'s Compl. ¶ 2, ECF No. 1. On appeal, Plaintiff argues that the ALJ erred by relying exclusively on the objective medical evidence of record to reject her subjective symptom testimony. RFC. Pl.'s Brief 5–8, ECF No. 32; Pl.'s Reply Brief 1–3, ECF No. 39. The Court disagrees.

The Ninth Circuit has established a two-step process to determine whether an ALJ may reject a claimant's subjective symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom . . . .
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

4 – OPINION AND ORDER

*Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) (citations and internal quotation marks omitted).

In order to find that a claimant is not credible as to the extent of alleged limitations, the ALJ "must rely either on reasons unrelated to the subjective testimony[,] . . . on conflicts between [their] testimony and [their] own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Although an ALJ may not discredit a claimant's subjective statements based solely on the absence of objective medical evidence corroborating the alleged symptoms, the lack of such evidence is nonetheless one among many factors an ALJ may point to when formulating a claimant's RFC. 20 C.F.R § 404.1529(c)(2); *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). An ALJ may also weigh a claimant's subjective symptom testimony based on conflicts between that testimony and a claimant's daily activities, even when the activities suggest some difficulty functioning. 20 C.F.R § 404.1529(c)(3)(1); *Smartt* 53 F.4th at 499–500 (holding that claimant's ability to "engage[] in a somewhat normal level of daily activity" such as cooking, cleaning, doing laundry, grocery shopping, and caring for her daughter supported discounting the claimant's subjective symptom testimony).

Here, the ALJ found Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence and Plaintiff's daily activities, and because the evidence indicated Plaintiff's symptoms improved with medication and treatment. Tr. 17–22. First, the ALJ noted that the medical imaging did not support the severity of Plaintiff's alleged symptoms. For example, an MRI of Plaintiff's right shoulder from March of 2010 showed no evidence of a full

5 – OPINION AND ORDER

thickness rotator cuff tear and only mild to moderate degenerative changes in the joint. Tr. 485; 530. Although Plaintiff underwent surgery to repair a ligament and treat her carpel tunnel syndrome, imaging of her right hand and wrist from May of 2010 similarly showed no signs of an acute fracture. Tr. 486; 521. Indeed, Plaintiff later reported that surgery to remove a pin from her right wrist "had considerably improved her symptoms" to such a degree that she was able to perform simple tasks like brushing her teeth and holding a steering wheel. Tr. 487.

The ALJ also relied on the opinion of Dr. Jeff Chung, MD, who examined Plaintiff in September 2021 for a Special Medical Evaluation. Tr. 20–21; 489. Dr. Chung pointed to multiple discrepancies between the objective medical evidence and the severity of Plaintiff's alleged symptoms. For instance, Dr. Chung noted that although Plaintiff complained of significant swelling in her right hand, measurements "revealed almost identical volumes between her symptomatic right and asymptomatic left hands." Tr. 496. Dr. Chung opined that "[t]here isn't a physiologic explanation for her loss of range of motion at her right thumb and fingers[.]" Tr. 497. Finally, Dr. Chung referenced Plaintiff's "severe subjective symptoms of pain, out of proportion to objective findings[.]" Tr. 491.

Dr. Chung also noted certain references in medical notes contrasted with Plaintiff's reports of debilitating pain:

> The fact that on 8-3-11 the patient was seen at St. Lukes ED with the following documented, "was working outside working [sic]. She works as a berry field that she manages" is inconsistent with the documentation on 1-14-10 by her chiropractor Sue Phillips DC, "She is not feeling good. Stated was laid off" or what she wrote in my pain questionnaire today; she wrote that she had been off work since Jan 4, 2020. If the information noted on 8-13-11 report is correct that she was working that day, it would appear that [Plaintiff] was working while receiving total temporary disability pay.

Tr. 497.

6 – OPINION AND ORDER

When examining the Plaintiff, Dr. Chung also observed numerous signs of symptom magnification. For example, his notes indicate that:

> She was able to take her glove off without any hesitation or evidence of pain. Her hands and wrists were equally tanned bilaterally. The lack of tan lines on her right hand and wrist indicated that she wasn't routinely wearing her compression glove or any other brace or splint.
>
> The patient had recently manicured nails with high quality artwork on her right ring finger nail that appeared professionally done.

Tr. 504; *see also*, tr. 501 ("When I asked her to take the glove off she had a well tanned hand without any tan lines (it was clear that she had routinely been out in the sun not wearing a glove or brace. It was also clear that her nails had been done recently.[)]"). Dr. Chung concluded Plaintiff's "ability to get her nails manicured is inconsistent with her having severe dysesthesias or hypersensitive hands." Tr. 496. Dr. Chung also noted that Plaintiff's "inability today when I asked to make a full fist with her right hand yet a few minutes later easily take her sunglasses off with her right hand without evidence of discomfort cannot be explained by a physiologic abnormality." Tr. 497. Finally, Dr. Chung observed that "[i]n other instances where the patient's focus was on other matters she was observed moving her right elbow, shoulder and neck freely without evidence of pain." Tr. 504. Together, these clinical observations led Dr. Chung to conclude that:

> I believe that the most likely explanation of the patient's persistent severe out of proportion pain complaints at the right upper extremity have a significant psychological component. There is an objective physiologic explanation for the patient's loss of range of motion at her wrist. There isn't a physiologic explanation for her loss of range of motion at her right thumb and fingers, although [Plaintiff] fulfilled validity measures during her [exam], her ability today to use her right hand to take off her glasses raises a concern that she has more range of motion at her fingers that she demonstrated during her [exam]. If the patient was working another job on 8-13-11 while receiving total temporary disability, this could also indicate she has better range of mobility and function than what was measured by Dell Felix PT today.

7 – OPINION AND ORDER

Tr. 497.

The ALJ considered Dr. Chung's opinion and, while finding certain specific opinions too vague, generally found Dr. Chung's opinion to be persuasive. Tr. 20–21. Relying solely on Dr. Chung's quite specific comments would, on its own, be a specific and legitimate reason for finding Plaintiff not fully credible as to the extent of her limitations. The ALJ, however, provided several other reasons for not including Plaintiff's more extreme alleged limitations into the RFC.

For example, the ALJ found the opinion of Dr. Stephen Anderson, MD, to be persuasive. Tr. 21. Dr. Anderson reviewed the medical record and testified as an impartial medical expert at the hearing. Tr. 21. After providing a thorough summary of Plaintiff's medical history during the period at issue, Dr. Anderson concluded Plaintiff could perform light work with some additional restrictions. Tr. 36–41. After summarizing Dr. Anderson's testimony, the ALJ concluded: "Dr. Anderson reviewed the entire record, his opinion is consistent with the record during the period at issue and is very well explained in his testimony. Therefore, his opinion is persuasive."[3] Tr. 16–17, 21. Plaintiff does not challenge either the ALJ's weighing of Dr. Anderson's opinion, or the fact that the ALJ incorporated that opinion into Plaintiff's RFC.

In addition to the above, the ALJ pointed to inconsistencies between Plaintiff's daily activities and the severity of her alleged symptoms. An ALJ may consider daily activities "to the extent that they contradict claims of a totally debilitating impairment."). *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). With minor difficulties, the ALJ noted that Plaintiff was able to cook dinner, vacuum, mop, carry boxes, and write with her right hand. Tr. 19; 21; 298; 338; 340; 343; 379. The ALJ referenced Dr. Anderson's testimony regarding medical records indicating "doctors noted that her hand was very tanned, and it was possible she was not compliant with the

---

[3] Dr. Anderson specifically referenced Dr. Chung's notes from the September 2021 examination. Tr. 40.

8 – OPINION AND ORDER

compression glove."[4] Tr. 17. The ALJ did not err in pointing to comments from several doctors who believed Plaintiff's complaints of severe hypersensitivity in her right hand contrasted with evidence that she was not wearing her compression glove. This is especially true when contrasted with Plaintiff's testimony that her hand was so sensitive "that even my cat whiskers tracing across my hand felt like razor blades and it would set off." Tr. 44.

In addition, treatment notes indicated that Plaintiff was able to drive multiple hours from Twin Falls, Idaho to Boise, Idaho. Tr. 356; 1175. There is evidence in the record to suggest that Plaintiff spent time working at a farmer's market, managed a berry farm, and was taking classes to train for another vocation during the period of alleged disability. Tr. 406; 497; 503; *see also*, tr. 839 ("[Patient] has been living on a farm in Oregon doing some light manual labor, what she describes is an internship at a farm as an extension of OSU."). Finally, Plaintiff presented to the emergency room in August 2010, complaining of "[a]ltered sensorium, headache." Tr. 623. *Despite coming eight months after Plaintiff's alleged onset date*, notes from this visit state: "This is a 53-year-old who says she felt fairly well this morning. About 0900 hours she was outside working. She works at a berry field that she manages. She began to feel a little dizzy. She got a slight occipital headache and nausea. She did not vomit." Tr. 623. All of this evidence supports the ALJ's finding that Plaintiff's symptom testimony contrasted sharply with her daily activities.

The ALJ also pointed to evidence indicating Plaintiff's condition improved with medical treatment. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

---

[4] As noted above, Dr. Chung also commented that Plaintiff's tanned hand indicated she was not wearing her compression glove. Tr. 501, 504. Additionally, although Plaintiff reported using her compression glove during a July 2011 appointment, her doctor noted "She really has not been using her compression as much as she stated because she is awfully tan down there, instead of being white like she should be if she was using that." Tr. 704. "I do not think she is being as compliant. Today is the first day I have thought that because she is awfully tan and the RSD hand is awfully tan as well. There is a slight difference but not like it should be with somebody hurting and having as many problems as she is." Tr. 704; *see Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (noting that an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").

9 – OPINION AND ORDER

("Impairments that can be controlled effectively with medication are not disabling . . . ."). Plaintiff reported feeling much better on numerous occasions after receiving stellate ganglion nerve blocks and taking pain medication. *See* tr. 303 ("[Patient] reports that the injections into the back of her head/neck really helped."); tr. 314 ("[Patient] has been prescribed lyrica and is feeling better."); tr. 487–88 (noting that Plaintiff stated that "she is the best that she has ever felt" after receiving a stale ganglion nerve block in February of 2011).

The record supports the ALJ's finding that Plaintiff's symptoms improved with physical therapy and treatment. For example, Plaintiff stated that "wearing her Isotoner glove . . . really helped to bring the swelling back down." Tr. 383. Treatment notes from Plaintiff's physical therapy sessions indicate that she was making good progress. Plaintiff told the physical therapist that "this is the best that [my] hand has felt ever since being injured" and "this has been the most flexible I have been." Tr. 408; *see also*, tr. 375 ("Patient reports that the dynamic extension brace has been working really well, her hand is feeling a lot better."); tr. 826 ("Our assumption here at the office is that she must be doing well because we have not heard back from her.").

Plaintiff argues that the ALJ may not reject a claimant's subjective symptom testimony based solely on an absence of objective medical evidence corroborating the alleged symptoms. Pl.'s Brief 7. However, this is not what the ALJ did. As outlined above, the ALJ also considered Plaintiff's improvement with medical treatment and the extent to which Plaintiff's daily activity level was inconsistent with her subjective symptom testimony. Tr. 17–22. As the ALJ's findings and conclusions were supported by substantial evidence in the record, the ALJ did not err. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (affirming the ALJ's decision to discount subjective symptom testimony based on objective medical evidence and the claimant's daily living activities).

10 – OPINION AND ORDER

In summary, because the ALJ utilized "ordinary techniques of credibility evaluation" and provided specific, clear, and convincing reasons for finding Plaintiff less than fully credible regarding the extent of her limitations, the ALJ did not err.[5] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Although other interpretations of the record may be reasonable, this does not meet the standard required for overturning the ALJ's conclusions.[6] *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (citation omitted).

### III.   CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 29th day of March, 2024.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

---

[5] The ALJ did not find Plaintiff had no limitations. To the contrary, the ALJ concluded Plaintiff had significant limitations (which are reflected in Plaintiff's RFC). The ALJ merely found that the record as-a-whole indicated Plaintiff could do more than she alleged.

[6] Plaintiff argues the ALJ erred by failing to include limitations stemming from her migraine headaches and fatigue in the RFC. Pl.'s Br. 8–9. According to Plaintiff, her "migraines would cause her to miss work or be off task. Such a limitation would have ruled out all fulltime, competitive employment. Additionally, the record shows that [Plaintiff] has difficulty sustaining activities, especially ones that require her to use her arms and hands, for significant lengths of time." Pl.'s Br. 9 (citations omitted). To be sure, if the ALJ found Plaintiff's testimony regarding her limitations credible, she would have been required to find Plaintiff disabled. But as demonstrated above, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for finding Plaintiff not fully credible as to the extent of her limitations. The ALJ considered Plaintiff's headaches but concluded they did not cause Plaintiff "any vocationally relevant functional limitations." Although there are some records indicating Plaintiff complained of headaches, the ALJ's did not err in finding migraines did not impact Plaintiff's RFC. And as demonstrated above, the ALJ concluded Plaintiff had significant limitations with her upper extremities. Plaintiff's arguments regarding her RFC are intertwined with her subjective symptom arguments. As demonstrated above, the ALJ did not err in that regard.

11 – OPINION AND ORDER